UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-60808-Civ-SCOLA
MAGISTRATE JUDGE P. A. WHITE

KEVIN EARL CARTWRIGHT,

     Petitioner,

v.                                        <u>REPORT OF</u>
                                     <u>MAGISTRATE JUDGE</u>
JULIE L. JONES,

     Respondent.

_____/

## I.  **Introduction**

The *pro se* petitioner, Kevin Earl Cartwright, a state prisoner, currently confined at the Santa Rosa Correctional Institution, has filed this petition for writ of habeas corpus, pursuant to 28 U.S.C. §2254, attacking the constitutionality of his state convictions for second degree murder and attempted first degree murder entered following guilty pleas in Broward County Circuit Court, case no. **08-8807-CF10A.**

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition (DE#1), the Court has the respondent's response (DE#11) to an order to show cause with multiple exhibits, which includes copies of the transcripts of the change of plea and sentencing proceedings.

## II. <u>Claims</u>

Construing the arguments liberally as afforded *pro se* litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972), the petitioner raises the following 3 grounds for relief:

1.  He was denied effective assistance of counsel, where his lawyer refused to call Detective Reynaldo Santo, Jr. to testify, in order to contradict the prosecution's key witness, Shameca Davis', in court testimony. (DE#1:4).

2.  He was denied effective assistance of counsel, where his lawyer failed to advise the court that the prosecution failed to disclose favorable evidence to the defense, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). (DE#1:5).

3.  He was denied effective assistance of counsel, where his lawyer failed to consult with petitioner regarding the status of the case. (DE#1:6).

4.  He was denied effective assistance of counsel, where his lawyer misadvised the petitioner on how much time he would actually serve if he accepted the prosecution's plea agreement. (DE#1:7).

5.  He was denied effective assistance of counsel, where his lawyer failed to prepare an adequate defense to the petitioner's charges. (DE#1:7).

6.  He was denied effective assistance of counsel, where his lawyer failed to object to the court's ruling that Detective Santo's in-court testimony would be hearsay. (DE#1:8).

7.  He was denied effective assistance of counsel, where defense counsel, Branden Smith, Esquire, refused to call Detective Santo, Jr. to testify at trial in order to impeach Shameca Davis' in-court testimony. (DE#1:9).

8.  He was denied effective assistance of counsel, where defense lawyer, Branden Smith, Esquire, failed to advise the court that the prosecution

2

witnesses, Shameca Davis and her sister, Latoya Davis, could have been impeached with their deposition testimonies. (DE#1:9).

9.  He was denied effective assistance of counsel, where defense lawyer, Branden Smith, Esquire, was so unreliable that it prejudiced the petitioner, forcing him to accept a 30-year plea offer. (DE#1:10).

10.  He was denied effective assistance of counsel, where defense counsel, Branden Smith, Esquire, stipulated with the prosecution regarding Detective Santo, Jr.'s testimony, thereby preventing petitioner from impeaching Shameca Davis. (DE#1:10).

11.  He was denied effective assistance of counsel, where his defense counsel, Branden Smith, Esquire, planned on proceeding to trial without petitioner's alibi witness, Detective Santos, Jr.; and, for failing to present a self-defense claim at trial. (DE#1:11).

12.  He was denied effective assistance of counsel, where his defense counsel, Branden Smith, Esquire, failed and/or refused to explain why he would not pursue an alibi defense, use exculpatory evidence, and advise the court of the testimony of Shameca Davis that was subject to impeachment. (DE#1:11-12).

### III. <u>Procedural History</u>

Petitioner was charged by Indictment with the first degree murder of Shanesha Conaway (Count 1) and the attempted first degree murder of Shameca Davis (Count 2), arising from events occurring on April 27, 2008. (DE#11:Ex.1). On June 18, 2008, the prosecution filed its notice of intent to seek the death penalty against petitioner. (DE#11:Ex.2).

On January 25, 2010, petitioner wrote a letter to the court,

requesting that his case be set for trial because he had already been pretrial detained for 641 days. (DE#11:Ex.3). He also complained that counsel was scheduling depositions in Gainesville which petitioner had informed him were unnecessary. (Id.). A couple of months later, petitioner next filed a motion for a Nelson[1] hearing. (DE#11:Ex.4). Attached thereto, he explains counsel has not gone to visit him, he no longer trusts counsel, counsel has neither shown nor told him anything about his case; and, as such, no longer feels safe with him. (DE#11:Ex.5).

Undeterred, petition filed a *pro se* demand for speedy trial, and motion to proceed *pro se* with appointment of stand-by counsel. (DE#11:Exs.6-7). At a March 18, 2010 hearing, petitioner advised the court that he wanted the Public Defender's Office discharged and to represent himself since counsel was not working for him, and he wanted a speedy trial. (DE#11:Ex.8:5-9). A colloquy was conducted by the court, in accordance with the requirements under Faretta,[2] at the conclusion of which the court granted petitioner's motion for self-representation, and appointed stand-by counsel. (DE#11:Ex.8:29-30). Petitioner's *pro se* motion for speedy trial was also granted, and the trial set to begin on April 26, 2010. (DE#11:Ex.8:31).

On April 26, 2010, before commencement of trial, petitioner again stated he wanted to continue to represent himself. (DE#10:Ex.9:2). The petitioner refused the court's offer to have the Public Defender reappointed to represent him. (DE#11:Ex.9:2-

---

[1] In brief, *Nelson* stands for the proposition that an inquiry by the trial court is appropriate when an indigent defendant attempts to discharge current, and obtain new, court-appointed counsel prior to trial due to ineffectiveness. Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973). See also Handpick v. State, 521 So.2d 1071 (Fla.), cert. denied, 488 U.S. 871 (1988).

[2] Faretta v. California, 422 U.S. 806 (1975).

4,14). After discussing some pretrial matters, and right before the start of trial, petitioner changed his mind, requesting that the Public Defender be reappointed to represent him. (DE#11:Ex.9:15-16). The court granted the petitioner's request, and reappointed the Public Defender to represent the petitioner. (DE#11:Ex.9:16).

At that time, defense counsel, Bruce Raticoff, Assistant Public Defender ("APD Raticoff") requested a continuance so that he could depose the surviving victim and file a motion to suppress petitioner's post-arrest statements. (DE#11:Ex.9:16). Petitioner then interjected that he did not want to be back in court until September, although trial was rescheduled for June 2010. (DE#11:Ex.9:17-21).

On April 27, 2010, defense counsel filed a motion to suppress. (DE#11:Ex.10). A hearing thereon was held on June 21, 2010, and the trial court also granted a continuance of trial. (DE#11:Ex.11:6). The suppression hearing continued on September 30, 2010. (DE#11:Ex.11:5). After the court granted defense counsel's motion for appointment of an expert, and appointed Dr. Elizabeth Blake to evaluate petitioner for competence, the trial was again rescheduled pending the competency evaluation. (DE#11:Ex.12).

After receipt of Dr. Blake's report finding the petitioner competent to proceed, a status conference was held on October 18, 2010. (DE#11:Ex.13). At that time, counsel advised the court that he and the petitioner were having difficulties because the petitioner was "insisting on running his own defense and calling witnesses which are clearly detrimental to his case." (DE#11:Ex.13:3). The court then explained to petitioner that counsel has the ultimate decision whether or not to call witnesses to testify at trial as it involves trial strategy. (DE#11:Ex.13:3).

Petitioner, however, believed counsel was trying to "hurt him." (DE#11:Ex.13:3). Petitioner then renewed a request for a second <u>Nelson</u> hearing. (DE#11:Ex.13:3).

After petitioner advised the court of the reasons why he wanted counsel discharged, counsel then apprised the court of the steps he had taken to prepare the case for trial. (DE#11:Ex.13:7-13). Counsel further advised the court that, contrary to the petitioner's representations, he had, in fact, gone to the jail and conferred with the petitioner about his case in excess of 20 times. (DE#11:Ex.13:7). Defense counsel also informed the court that he and two other defense attorneys from his office went to the jail and played the surveillance video tape that would be shown to the jury. (DE#11:Ex.13:7-9). The video recording shows petitioner shooting the victim and chasing his ex-wife, shooting at her, and when his gun jammed, striking her with the butt of the gun. (DE#11:Ex.13:7-9). Counsel then explained to the court that petitioner desired to represent himself, and that as his lawyer, he would not be a party to having petitioner instruct him to call witnesses that will hurt rather than aid in his defense. (DE#11:Ex.13:9-10). Based on the "animosity" existing between petitioner and defense counsel, the court found a conflict existed which required the withdrawal of counsel and the Public Defender. (DE#11:Ex.13:10-13).

Thereafter, the court appointed conflict free counsel, Brendan P. Smith, Esquire ("Attorney Smith"), and pretrial preparation continued until March 2011, when petitioner filed a new motion seeking to represent himself, accusing his second, court appointed counsel of working with the prosecution and violating his due process rights by failing to call material defense witnesses to testify at trial. (DE#11:Ex.14). A hearing was held on the motion,

at which time the court advised petitioner that he was not allowed to proceed *pro se* and with counsel, but that the court would be willing to conduct a <u>Faretta</u> hearing if petitioner wanted to represent himself, or another <u>Nelson</u> hearing to determine whether petitioner is entitled to yet another court-appointed attorney. (DE#11:Ex.15:2-3).

Petitioner requested that the court conduct a <u>Nelson</u> hearing. (<u>Id</u>.). In response to the court's inquiry, petitioner complained that counsel was refusing to call Fort Lauderdale Detective Reynaldo Santo, Jr., as a vital defense witness at trial. (DE#11:Ex.15:3-4). Defense Attorney Smith explained that even though the officer was listed in the prosecution's discovery list of witnesses, he had never indicated to the petitioner any objection to calling those witnesses. (DE#11:Ex.15:4). The court again reminded petitioner that it was up to his attorney to decide who to call as a defense witness, that Attorney Smith would further discuss the issue with petitioner, and that Officer Santo would be available for petitioner to call as a witness at trial. (DE#11:Ex.15:5-6).

Next, petitioner explained he also had several other defense witnesses he wanted called, but these witnesses were also listed by the prosecution. (DE#11:Ex.15:6-7). Petitioner admitted that, although counsel had no issue listing them as defense witnesses, he had not affirmatively stated he was definitely going to call them as defense witnesses at trial. (<u>Id</u>.).

Petitioner also advised the court that he had issues with the prosecution presenting the "perjured" testimony of the victim, and that his attorney refused to impeach her testimony. (DE#11:Ex.15:7-8). In response, Attorney Smith explained that he was ready to

effectively cross-examine the victim when she testified at trial. (DE#11:Ex.15:8-9). Thereafter, petitioner agreed to withdraw his motion to discharge counsel. (DE#11:Ex.15:8-9,13-14).

Not long thereafter, petitioner filed a third letter/motion with the court requesting another Nelson hearing. (DE#11:Ex.17:2). A hearing was conducted thereon, at which time petitioner was advised that if counsel were deemed incompetent, then another attorney would be appointed, but if counsel were found competent, then petitioner would have to decide whether he wanted to proceed with counsel or *pro se*. (DE#11:Ex.17:2-3). In response to the court's inquiry, petitioner advised the court that counsel needed to call favorable witnesses, listing Detective Santo, Jr., Lisa James, Mark DeBord, Deanna Garcia, Ilene Reyes, Latoya Davis, Alice Conway, together with all other witnesses previously listed by petitioner's counsel. (DE#11:Ex.17:3-4). In response, counsel advised the court that all of the witnesses were already under subpoena, and as a result, the court found the issue was resolved. (DE#11:Ex.17:4).

Next, petitioner argued that the videotape of the crime scene, which the prosecution intended to introduce at trial, had been altered. (DE#11:Ex.17:5-6). The court responded that the admissibility of the videotape would be evaluated at the time of trial. (DE#11:Ex.17:6-8). Because petitioner had no other issues demonstrating incompetency by counsel, the court found defense counsel was acting competently and appropriately, and as such, denied the petitioner's request to discharge counsel. (DE#11:Ex.17:7). When asked if he wanted to represent himself or proceed with counsel, petitioner indicated he was not going to represent himself, and agreed to go forward. (DE#11:Ex.17:7-9).

At a May 2011 status hearing, counsel advised the court that Officer Santo was not available as a witness during the week the case was set for trial because he was scheduled to be in George for a "week-long training". (DE#11:Ex.18). The prosecution responded that it was not intending to call Officer Santo. (DE#11:Ex.18:4). The court indicated, however, that Officer Santo was under subpoena, and therefore, had to be available. (DE#11:Ex.18:3).

The prosecution then requested that the court determine the admissibility at trial of Officer Santo's proffered testimony. (DE#11:Ex.18:3-4). After hearing the proffer from the defense, the court found the testimony inadmissible hearsay. (DE#11:Ex.18:4). In response, defense counsel informed the court that he had advised petitioner that the prosecution would in all likelihood object to Detective Santo's testimony on hearsay grounds. (DE#11:Ex.18:4-5). After advising petitioner of the applicability of the Florida Rules of Evidence, if an objection to the testimony were made at trial, the court advised petitioner that the objection would be sustained, resulting in the officer's testimony not being allowed. (DE#11:Ex.18:5-6).

Although the prosecution never intended to call Detective Santos as a witness, it agreed to stipulate to the admission of Detective Santo's report, even though that document would also constitute hearsay. (DE#11:Ex.18:6-7). Although counsel agreed to the stipulation, petitioner did not, arguing that the report would not aid in his defense if Detective Santo did not testify. (DE#11:Ex.18:6-7). Petitioner was again informed that Detective Santo's testimony would be inadmissible hearsay, and that the prosecution was accommodating petitioner by allowing him to use the report. (DE#11:Ex.18:7-8). Petitioner insisted he wanted Detective Santo to testify at trial that the victim was committing perjury,

but the court denied petitioner's motion to force the officer to appear for trial. (DE#11:Ex.18:7-8). After further discussion with the petitioner, regarding his discontent as to why Detective Santo's testimony would not be admissible, the proceeding concluded with trial scheduled to start the following Monday. (DE#11:Ex.18:9-11).

On May 9, 2011, petitioner was scheduled to start jury selection, but his defense attorney was in trial before another judge. (DE#11:Ex.19:2-5). The court then conducted a colloquy with petitioner regarding why he was still in prison garb for trial, and not in the suit provided by counsel, to which petitioner responded that he was not going to proceed to trial with that defense attorney. (DE#15:Ex.19:6-8). In fact, petitioner threatened to break counsel's jaw if he were put next to petitioner. (Id.). He also accused counsel of trying to "set him up." (Id.). The court noted that petitioner appeared very upset and frustrated. (Id.). Petitioner responded that he was very "pissed off" that all he wanted was for this one witness, Detective Santo, Jr., to testify and everyone was prohibiting him from doing so. (Id.). At one point, petitioner went so far as to question why he was even bothering with speaking to the court about the issue. (Id.:18).

Yet again, the court reminded petitioner that which witnesses to call at trial was within counsel's purview, and instructed petitioner that if he wanted to represent himself, the court would conduct another Faretta[3] hearing, but cautioned petitioner about the pitfalls of self-representation. (DE#11:Ex.19:9-15). A heated discussion then ensued between petitioner and the prosecution. (DE#11:Ex.19:10-15).

---

[3]Faretta v. California, 422 U.S. 806 (1975).

10

Petitioner again renewed his discontent with counsel, alleging counsel had not gone to see him in jail, and was not assisting in his defense. (DE#11:Ex.19:13). Petitioner stated that counsel was not properly defending him, as demonstrated by the fact that counsel heard the prosecution lie and did nothing about it. (DE#11:Ex.19:15). When he was again asked whether he was going to represent himself or allow defense counsel to represent him, petitioner stated that he would represent himself since he had no lawyer. (DE#11:Ex.19:18-19). He then agreed that he wanted to represent himself at trial, set to start the following day. (Id.). The court advised petitioner that if counsel were discharged, counsel would be ordered to remain as "stand-by counsel," in the event petitioner had a change of heart regarding being represented by counsel. (DE#11:Ex.19:19-23). The court then found petitioner effectively waived his right to counsel, advised petitioner of all the rules that would still apply to him, despite his self-representation, but that Attorney Smith would remain as stand-by counsel in case petitioner required his assistance. (DE#11:Ex.19:23-24). The petitioner, however, insisted he did not want counsel around him, and in fact, wanted him to sit as far away as possible. (Id.).

When petitioner was reminded to wear proper attire for trial the following day, petitioner became argumentative, stating he did not care if the jury observed him in prison garb. (DE#11:Ex.19:25-26). Petitioner then accused the court of "screwing" with him, and told the judge he wanted to get out of the courtroom because he did not want to hear any more of the judge's "shit." (DE#11:Ex.19:25-26). The court indicated that it would do its best to ensure that petitioner received a fair trial and felt sorry that petitioner felt that way. (Id.).

11

The petitioner appeared for trial on May 10, 2011, at which time the court inquired anew whether petitioner still wanted to represent himself or wanted the court to re-appoint Attorney Smith. (DE#11:Ex.20:2). Petitioner responded, advising the court that it had "forced" petitioner to represent himself. (DE#11:Ex.20:2-3). At that point, the court reminded petitioner it had gone through numerous Nelson hearings, and every time the court had determined petitioner's counsel had acted in a competent fashion, so that petitioner was not entitled to have a different attorney appointed. (DE#11:Ex.20:2-3).

The court also reminded petitioner that this was his second court-appointed attorney, and as such, the petitioner had the choice either to represent himself or to allow defense counsel to represent him. (DE#11:Ex.20:3). When asked how he wished to proceed, petitioner insisted the court had forced him to represent himself. (DE#11:Ex.20:4). Petitioner remained adamant he did not want Attorney Smith to represent him, but he also did not want to proceed *pro se*. (DE#11:Ex.20:4-5). After going through yet another colloquy, the court reminded petitioner he could hire his own lawyer, let Attorney Smith represent him as his court-appointed counsel, or he could represent himself. (DE#11:Ex.20:6,8). Petitioner insisted he was not a lawyer, and accused the court of forcing him to represent himself. (Id.).

The prosecution advised the court that petitioner had also filed a motion to disqualify the judge. (DE#11:Ex.20:9-10). The trial court denied the petitioner's motion. (DE#11:Ex.20:11). The court then conducted yet another Faretta hearing before commencing with the jury trial. (DE#11:Ex.20:11-25). Petitioner again insisted he was not an attorney, and was adamant he did not want Attorney Smith as stand-counsel. (DE#11:Ex.20:24,30). Since Attorney Smith

12

was in trial in another courtroom, another attorney with the conflict counsel office stood in as stand-by counsel. (DE#11:Ex.20:28-29).

After advising petitioner how trial would be conducted, the court then inquired whether any plea offers had been extended by the prosecution in this case. (DE#11:Ex.20:30-32). The prosecution responded, advising the court that petitioner had approached the prosecution, requesting a plea to a term of 8 years imprisonment, followed by an extended period of probation. (DE#11:Ex.20:32). The prosecution also advised the court that petitioner was now asking the prosecution to offer a 20-year plea, followed by 5 years probation, but the prosecution was not amenable to extend either offer. (DE#11:Ex.20:32-33).

The prosecution then advised the court that, if petitioner agreed to plead guilty to second degree murder, the prosecution would agree to a 30-year term of imprisonment, with a 25-year minimum mandatory as to Count 1, and as to Count 2, the petitioner would be required to serve the 25-year minimum mandatory term of imprisonment. (DE#11:Ex.20:34). Petitioner agreed to have current stand-by counsel's assist with plea negotiations; and, as a result, a plea was negotiated with the prosecution. (DE#11:Ex.20:36-38).

After consultation, petitioner asked the court to reappoint the Office of Regional Counsel to represent him. (DE#11:Ex.20:39). The court then conducted a change of plea proceeding. (DE#11:Ex.20:40). At that time, petitioner decided to accept the prosecution's plea offer. (DE#11:Ex.20:41). After being placed under oath, a colloquy was conducted on the record, at which time petitioner denied being threatened, forced, or otherwise coerced into changing his plea to guilty. (DE#11:Ex.20:41-53). Petitioner

further conceded that no one had misrepresented anything to him in order to induce him to change his plea. (DE#11:Ex.20:52-54). He further admitted that there was nothing that his lawyers had failed and/or refused to do in negotiating a plea, working up the case, and preparing the case for trial. (Id.).

After further discussion, when the court asked petitioner if he still wished to enter pleas of guilty to the offenses of second degree murder, and attempted first degree murder, and whether he was doing so knowingly and voluntarily, the petitioner responded in the affirmative. (Id.). Thereafter, the court reviewed its file and the facts and circumstances of the offenses contained therein, finding there was an independent factual basis to support each of the charged offenses. (Id.). The court thus found petitioner was intelligent and alert, and understood the nature of the charges and the consequences of his guilty pleas. (Id.). The court determined the plea was knowing and voluntary, and as such, accepted petitioner's guilty pleas and adjudicated him guilty. (Id.). He was then sentenced in accordance with the terms of the plea. (DE#11:Ex.20:54-55; DE#11:Ex.21).

Seventeen days later, petitioner filed a *pro se* handwritten motion seeking to withdraw his pleas because the court coerced petitioner to change his plea, failed to have the petitioner mentally evaluated, and failed to advise petitioner of the direct consequences of his plea. (DE#11:Ex.22). Following the state's response thereto, the trial court entered a long, detailed order, relying on applicable Florida law, and then denying the petitioner's motion, finding the arguments raised therein to be conclusively refuted by the record. (DE#11:Ex.24:279-86). Petitioner prosecuted a direct appeal, challenging the denial of his motion to withdraw plea after sentencing. (DE#11:Ex.25). On

14

**April 17, 2013**, the Florida Fourth District Court of Appeal *per curiam* affirmed the denial of the motion and petitioner's conviction in a decision without written opinion. <u>Cartwright v. State</u>, 112 So.3d 582 (Fla. 4 DCA 2013). After no rehearing motion was filed, the proceeding concluded with the issuance of the mandate on May 17, 2013.[4]

It does not appear that petitioner sought discretionary review with the Florida Supreme Court. The time for doing so expired, at the latest, thirty days after issuance of the appellate court's order affirming the convictions, or no later than **May 17, 2013**.[5] Since he did not seek discretionary review to the Florida Supreme Court, he is not entitled to an additional ninety days to file a petition for a writ of certiorari in the United States Supreme Court. <u>Gonzalez v. Thaler</u>, 566 U.S. 134, 139, 132 S.Ct. 641, 646 (2012).[6] Therefore, at the earliest, his judgment of conviction

---

[4]By separate order, a copy of the state appellate court dockets are being filed and made part of the record herein.

[5]Pursuant to <u>Fla.R.App.P.</u> 9.120(b), a motion to invoke discretionary review must be filed within 30 days of rendition of the order to be reviewed.

[6]In applying the Supreme Court's <u>Gonzalez</u> opinion to this case, the petitioner here is not entitled to the 90-day period for seeking certiorari review with the United States Supreme Court, because after his judgment was affirmed on direct appeal, petitioner did not attempt to obtain discretionary review by Florida's state court of last resort-the Florida Supreme Court, nor did he seek rehearing with the appellate court. See <u>Gonzalez v. Thaler</u>, ___ U.S. ___, 132 S.Ct. 641, 653-54, 181 L.Ed.2d 619 (2012)(holding that conviction becomes final upon expiration of time for seeking direct review); <u>Jimenez v. Quarterman</u>, 555 U.S. 113, 118-21, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009)(explaining the rules for calculating the one-year period under §2244(d)(1)(A)). <u>See also</u> <u>Clay v. United States</u>, 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003)(holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."); <u>Chavers v. Secretary, Florida Dept. of Corrections</u>, 468 F.3d 1273 (11th Cir. 2006)(holding that one-year statute of limitations established by AEDPA began to run 90 days after Florida appellate court affirmed habeas petitioner's conviction, not 90 days after mandate was issued by that court). In other words, where a state prisoner, who pursues a direct appeal, but does not pursue discretionary review in the state's highest court after the intermediate appellate court affirms his conviction, the conviction becomes final when time for seeking such discretionary

became final on **May 17, 2013.**

Nevertheless, assuming, without deciding, that petitioner was entitled to seek review to the U.S. Supreme Court, then alternatively, his conviction would have become final at the latest on **Tuesday,[7] July 16, 2013,**[8] when the 90-day period for seeking

review in the state's highest court expires. <u>Gonzalez</u>, 565 U.S. 134, 132 S.Ct. 641 (2012).

[7]As applied here, under <u>Fed.R.Civ.P.</u> 6(a)(1), "in computing any time period specified in ... any statute that does not specify a method of computing time ... [the court must] exclude the day of the event that triggers the period[,] count every day, including intermediate Saturdays, Sundays, and legal holidays[, and] include the last day of the period," unless the last day is a Saturday, Sunday, or legal holiday. Where the dates fall on a weekend, the Undersigned has excluded that day from its computation.

[8]For purposes of 28 U.S.C. §2244(d)(1)(A), where a state prisoner does not seek discretionary review in the state's highest court of the decision of the intermediate appellate court, the judgment becomes final" for purposes of §2244(d)(1)(A) on the date the time for seeking such review expires. Courts were initially split on when a judgment becomes final in the event the state prisoner did not seek discretionary review in the state's highest court of the intermediate state appellate court's decision. In <u>Gonzalez v. Thaler</u>, 565 U.S. 134, 132 S.Ct. 641 (2012), the U.S. Supreme Court resolved the split in circuits, explaining that scouring each state's laws and cases to determine how the state defined finality would contradict the uniform meaning of "conclusion of direct review" accepted by the Court in prior cases. The Court further rejected the argument that the limitations period does not commence running until the expiration of the 90-day period for filing a petition for writ of certiorari, where the petitioner does not seek review in the state's highest court. <u>Id</u>. The Supreme Court explained that it can only review judgments of a "state court of last resort" or of a lower state court if the "state court of last resort" has denied discretionary review. See <u>Gonzalez v. Thaler</u>, 565 U.S. 134, 132 S.Ct. 641 (2012)(<u>citing</u> <u>Sup.Ct.R</u>. 13.1 and 28 U.S.C. §1257(a)).

The Eleventh Circuit has yet to revisit the issue since <u>Gonzalez</u>. However, some courts to have discussed <u>Gonzalez</u> have found it to be distinguishable as applied to Florida cases, because the Supreme Court of Florida does not have jurisdiction to review a district court's *per curiam decision* without written opinion on direct appeal. See <u>Jackson v. State</u>, 926 So.2d 1262, 1266 (Fla. 2006)(Florida Supreme court holding that it does not have jurisdiction to review "unelaborated per curiam decisions issued by a district court of appeal."). These courts have determined that the filing of a petition for writ of discretionary review with the Supreme Court of Florida would have been futile. In other words, petitioner's who convictions are *per curiam* affirmed without opinion on direct appeal, need not seek discretionary review with the Florida Supreme Court, since the intermediate appellate court is the "state court of last resort." Further, those courts have also granted petitioner's an additional 90 days from the time the intermediate appellate court affirmed the judgment or denied rehearing, representing the time in which Petitioner could have filed a petition for writ

16

review expired following the conclusion of his direct appeal. For purposes of this order, the undersigned has utilized this later date.

Before the mandate even issued on direct appeal, the petitioner returned to the trial court filing his first Rule 3.850 motion for post-conviction relief, raising multiple claims, including **claims 1 through 6** of this federal petition, as listed above. (DE#11-1:Ex.27:364-366). The trial court denied relief based on the state's response thereto, a copy of which it attached to the court's order. (DE#11-1:Exs.28-29:357-386). That denial was subsequently *per curiam* affirmed by the Florida Fourth District Court of Appeal, in a decision without written opinion. <u>Cartwright v. State</u>, 147 So.3d 1008 (Fla. 4 DCA 2014)(table). The proceeding concluded with the issuance of the mandate on **September 29, 2014.** (DE#11-1:Ex.30).

The first Rule 3.850 proceeding above had not concluded when the petitioner next returned to the trial court filing a second Rule 3.850 motion for post-conviction relief, raising multiple claims, including **claim 7 through 12** of this federal petition, as listed above. (DE#11-1:Ex.31:390-402). The state filed a response thereto, arguing that the claims raised therein should have been, but were not raised by petitioner in this first Rule 3.850 post-conviction motion. (DE#11-1:405). As such, the state argued the second Rule 3.850 motion should be dismissed as an impermissible

---

of certiorari with the Supreme Court of the United States, but failed to do so. <u>See</u> <u>e.g.</u>, <u>Flynn v. Tucker</u>, 2012 WL 4863051 (S.D.Fla. 2012)(stating that because the Florida Supreme Court lacked jurisdiction to review an appeal of the Third DCA's opinion and such an appeal would have been futile, Petitioner's only other avenue of review was to file a petition for writ of certiorari with the United States Supreme Court within ninety days after entry of judgment)(unpublished); <u>Sierra v. Crews</u>, 2014 WL 1202990 (N.D. Fla. 2014)(unpublished)(same); <u>Gilding v. Sec'y, Dep't of Corr's</u>, 2012 WL 1883745, *2 n.6 (M.D.Fla. 2012)(unpublished) (same).

successive Rule 3.850 motion. (DE#11-1:405-06). The trial court denied relief based on the state response. (DE#11-1:408-209). That denial was subsequently *per curiam* affirmed by the Florida Fourth District Court of Appeal in a decision without written opinion. Cartwright v. State, 169 So.3d 1187 (Fla. 4 DCA 2015)(table). The proceeding concluded with the issuance of the mandate on **July 10, 2015.** (DE#11-1:410).

The limitations ran untolled from conclusion of the above proceeding on **July 10, 2015** for **269 days,** until **April 5, 2016,** when petitioner signed and then handed his federal petition to prison officials for mailing in accordance with the mailbox rule.[9] (DE#1:19). In all, a total of **269** days of untolled time expired from the time petitioner's judgments became final and the filing of this federal habeas petition.

## IV. Threshold Issues - Timeliness, Exhaustion and Procedural Bar

### A. Timeliness

Not long after all state court proceedings had concluded unfavorably for petitioner, he came to this Court, filing the subject §2254 petition. The respondent rightfully does not challenge the timeliness of the subject petition. See 28 U.S.C.

---

[9]"Under the prison mailbox rule, a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); see Fed.R.App. 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

§2244(d).  **(DE#11:28).**  As noted above, less than one year of untolled time expired from the time the petitioner's judgments became final and the filing of this federal habeas petition. Thus, the federal petition is timely filed and ripe for federal habeas corpus review.

## B.  **Exhaustion & Procedural Bar**

The respondent concedes that **claims 1 through 6** of this federal petition, as listed above, were exhausted, having been raised by petitioner in his initial Rule 3.850 proceeding, but maintains that **claims 7 through 12**, although arguably exhausted because they were raised in a second Rule 3.850 motion, they are procedurally defaulted from review here because the state forum applied a procedural bar finding the petitioner should have raised the claims in his initial Rule 3.850 motion and not a second unauthorized successive Rule 3.850 motion. (DE#11:32).

It well-settled that an applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c).[10] See Mauk v. Lanier, 484

---

[10]The terms of 28 U.S.C. §2254(b) and (c) provide in pertinent part as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>     (A)  the applicant has exhausted the remedies available in the courts of    the State; or
>     (B)  (i) there is absence of available State corrective process; or
>         (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

> .   .   .

> (c) An applicant shall not be deemed to have exhausted

F.3d 1352, 1357 (11th Cir. 2007). It has long been determined required that, prior to filing a §2254 petition, a petitioner must have exhausted his available state court remedies, thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)(quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

To provide the state with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court thereby alerting that court to the federal nature of the claim. Baldwin v. Reese, 541 U.S. 27, 29-30 (2004); Duncan v. Henry, 513 U.S. 364, 365-366 (1995). See also O'Sullivan v. Boerckel, 526 U.S. 838 (1999). In other words, proper exhaustion of a claim must be "serious and meaningful," requiring the petitioner to "afford the State a full and fair opportunity to address and resolve the claim on the merits." Kelley v. Sec'y for Dep't of Corr's, 377 F.3d 1317, 1343-44 (11th Cir. 2004). Further, a claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982), cert. denied, 460 U.S. 1056 (1983).

In Florida, exhaustion is ordinarily accomplished on direct appeal. If not, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial; Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal

---

the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

from its denial. <u>See</u> <u>Caraballo v. State</u>, 805 So.2d 882 (Fla. 2d DCA 2001). Claims of ineffective assistance of trial counsel are generally not reviewable on direct appeal, but are properly raised in a motion for postconviction relief. <u>See</u> <u>Kelley v. State</u>, 486 So.2d 578, 585 (Fla.), <u>cert. den'd</u>, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). Further, in Florida, claims concerning representation received by appellate counsel are properly brought by way of a petition for habeas corpus relief to the appropriate district court of appeal. <u>State v. District Court of Appeal, First District</u>, 569 So.2d 439 (Fla. 1990). Exhaustion also requires that an ineffective assistance of trial counsel claim not only be raised in a Rule 3.850 motion, but the denial of the claim be presented on appeal. <u>See</u> <u>Leonard v. Wainwright</u>, 601 F.2d at 808.

Where, as here, issues are not presented to the state court in an initial Rule 3.850 motion, but rather in a second Rule 3.850, dismissed by the trial court as an unauthorized successive motion, because the petitioner had already filed one Rule 3.850 motion, it is considered procedurally defaulted or barred from federal review. <u>See</u> <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11th Cir. 1999); <u>Kelley v. Secretary for Dept. of Corr</u>., 377 F.3d 1317, 1351 (11th Cir. 2004)("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."(internal quotation marks omitted)); <u>Canif v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001)("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326-27 (11th Cir. 1998)(applicable state procedural bar should be enforced by federal courts even as to a claim which has never been presented to a state court).

As applied here, it would be futile to dismiss this case to give petitioner the opportunity to exhaust **claims 7 through 12** in state court because they could have been, but were not raised by petitioner in his initial Rule 3.850 proceedings. The petitioner's procedurally defaulted claims are now incapable of exhaustion at the state level and, in fact, have been procedurally barred under Florida law. Petitioner cannot now file a timely, third Rule 3.850 motion for post-conviction relief. Therefore, there is no longer a remedy available in state court since the claims were expressly procedurally barred there.[10] See Cone v. Bell, 556 U.S. 449, 460, 129 S.Ct. 1769, 1780 (2009); Coleman v. Thomas, 501 U.S. 722, 731-732 (1991).

Since petitioner cannot now return to the state court to successfully pursue **claims 7 through 12**, the claims are considered procedurally defaulted. See Thomas v. Crews, 2013 WL 3456978, 14, 14 n.8 (N.D.Fla. 2013). Even when a claim has been procedurally defaulted in the state courts, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Maples v. Thomas, 565 U.S. 266, 276, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012)(citations omitted); In Re Davis, 565 F.3d 810, 821 (11th Cir. 2009)(citation omitted). See also Martinez v. Ryan, 566 U.S. 1, 9-10, 132 S.Ct. 1309, 1316, 182 L.Ed.2d 272 (2012).

For a petitioner to establish cause, the procedural default

---

[10]The Florida procedural rule deeming as waived or abandoned claims for which an appellant had not presented any argument in his initial brief, even when the post-conviction evidentiary hearing was limited in scope to some but not all post-conviction claims and the appellant's insufficiently presented claims were summarily denied by the trial court, is a firmly established and regularly followed procedural rule for purposes of federal habeas. See Thomas v. Crews, 2013 WL 3456978, *14 n.8 (N.D.Fla. 2013)(compiling cases).

"must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)(quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397). In Martinez v. Ryan, the Supreme Court created a narrow exception to the rule that an attorney's errors in a postconviction proceeding do not qualify as cause for a procedural default. The Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Martinez, 566 U.S. at 12, 132 S.Ct. at 1320. To establish prejudice, a petitioner must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Martinez, 566 U.S. at 12, 132 S.Ct. at 1320 (quoting Carrier, 477 U.S. at 494, 106 S.Ct. 2639, 91 L.Ed.2d 397).

Petitioner has not demonstrated in his §2254 petition cause or prejudice to excuse the procedural default of the claims. Moreover, he has not filed a traverse, nor has he explained why he failed to raise claims 7 through 12 in his initial Rule 3.850 motion. To the extent petitioner attempts, in objections, to suggest he is ignorant of the law, that does not excuse his failure to properly exhaust the claims raised herein in the state forum. Finally, any attempt to suggest in objections that his procedural default should be excused based upon the Supreme Court's decision in Martinez v. Ryan, supra, such argument should not be considered for the first time in objections. Moreover, it nonetheless warrants no relief.

In *Martinez v. Ryan*, 566 U.S. 1, 9, 132 S.Ct. 1309, 1318, 182 L.Ed.2d 272 (2012), the Supreme Court held that if "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim ..." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding, where the claims should have been raised, was ineffective, pursuant to *Strickland [v. Washington*, 466 U.S. 668 (1984)]." *Martinez v. Ryan*, 566 U.S. at 9, 132 S.Ct. at 1318. In this regard, the petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id*.

In other words, in *Martinez v. Ryan*, 566 U.S. 1, 11, 132 S.Ct. 1309, 1320 (2012), the Supreme Court explained that "[W]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing **a substantial claim** of ineffective assistance at trial if, in the initial-review collateral proceeding, **there was no counsel or counsel in that proceeding was ineffective**." *Martinez v. Ryan*, *supra*.(emphasis added). Therefore, relief is available if (1) state procedures make it virtually impossible to actually raise ineffective assistance of trial counsel claims on direct appeal; and (2) the petitioner's state collateral counsel was ineffective for failing to raise ineffective assistance of trial counsel claims in the state proceedings. *See Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1261 n.31 (11th Cir. 2014).

The claim of ineffective assistance must be a "substantial one, which is to say that the prisoner must demonstrate that the

claim has some merit." <u>Martinez</u>, 132 S.Ct. at 1318. The Eleventh Circuit held in <u>Trevino v. Thaler</u>, 133 S.Ct. 1911 (11th Cir. 2013), that the exception recognized in <u>Martinez</u> applies when a State's procedural framework makes it highly unlikely that a defendant in a typical case will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal.

In <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1262 (11th Cir. 2014), the Eleventh Circuit explained <u>Martinez</u>' "substantial claim" requirement, reiterating that:

> To overcome the default, a prisoner must ... demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. <u>Cf.</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)(describing standards for certificates of appealability to issue).

<u>Martinez</u>, ___ U.S. at _____, 132 S.Ct. at 1318-19. In <u>Miller-El</u>, the Supreme Court explained that "[a] petitioner satisfies this standard by demonstrating ... that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. at 327, 123 S.Ct. at 1034. Where the petitioner has to make a "substantial showing" without the benefit of a merits determination by an earlier court, he must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484, 120 S.Ct. 1594, 1604, 146 L.Ed.2d 542 (2000). "[A] claim can be debatable even though every jurist of reason might agree, after the ... case has received full consideration, that petitioner will not prevail." <u>Id</u>.

The Eleventh Circuit in <u>Hittson</u> also observed that the foregoing standard is similar to the preliminary review standard set forth in Rule 4 of the Rules Governing §2254 Proceedings, which allows district courts to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." <u>See</u> <u>Hittson</u>, 759 F.3d at 1269-70 (footnotes omitted). Thus, the Eleventh Circuit instructs that the §2254 petition must be examined to determine whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right...." <u>Hittson</u>, <u>supra</u>.

As applied here, the respondent is correct that while all of the claims were raised in the state forum, claims 7 through 12 were procedurally defaulted because the petitioner did not raise them in the initial Rule 3.850 proceeding. As a result, the state trial court applied a procedural bar to the claims. Consequently, they are now procedurally defaulted from review here. Nevertheless, <u>Martinez v. Ryan</u>, <u>supra</u>., provides an exception to the procedural default rule, allowing review of such claims if petitioner can demonstrate that his claims of ineffective assistance of counsel are "substantial." In other words, petitioner must make a showing of a "substantial" claim of ineffective assistance of trial or appellate counsel which will be addressed in the Discussion section, *infra*. However, given the detailed procedural history of this case, as narrated above, the petitioner cannot demonstrate that claims 7 through 12 are substantial claims of ineffective assistance of trial counsel. Consequently, he cannot utilize <u>Martinez v. Ryan</u>, <u>supra</u> to circumvent the procedural default of the

claims.[10]

Notwithstanding, actual innocence may also "serve as a gateway through which a petitioner may pass whether the impediment is a procedural bar... or ... expiration of the statute of limitations." McQuiggen v. Perkins, 133 S.Ct. 1924, 1928 (2013); see Carrier, 477 U.S. at 496 ("in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."). This exception requires the petitioner to persuade the district court that, in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Id.; Rozzelle v. Sec'y, Fla. Dep't of Corr's, 672 F.3d 1000, 1011 (11th Cir. 2012).

In making this assessment, the timing of the petition is a factor bearing on the reliability of the evidence purporting to show actual innocence. Schlup v. Delo, 513 U.S. 298, 327 (1995). To successfully plead actual innocence, a petitioner must show that his conviction resulted from a "constitutional violation." Id. at 327. "Actual innocence" means factual innocence, not mere legal insufficiency. Johnson v. Fla. Dep't of Corr's, 513 F.3d 1328, 1334 (11th Cir. 2008). This exception is exceedingly narrow in scope and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001); Spencer, 609 F.3d at 1180. No such showing is made here. Rather, he is raising a legal defense, not factual innocence. Regardless, even if

---

[10]Even if certain claims are technically unexhausted, the Court has exercised the discretion now afforded by Section 2254, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See Johnson v. Scully, 967 F.Supp. 113 (S.D.N.Y. 1996); Walker v. Miller, 959 F.Supp. 638 (S.D. N.Y. 1997; Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996).

he is attempting to assert a free-standing claim of factual innocence, petitioner cannot prevail on that basis.

It is noted that, even if the claims were not procedurally barred for the reasons stated immediately above, careful review of the record shows that petitioner would still not be entitled to review, let alone relief, on the ineffective assistance of counsel claims now raised. This is so, because the claims are meritless. See Strickland v. Washington, 466 U.S. 668 (1984). Accordingly, petitioner cannot show prejudice to overcome the procedural bar.

In the absence of a showing of cause and prejudice, a petitioner may nevertheless receive consideration on the merits of a procedurally defaulted claim if he can establish a fundamental miscarriage of justice otherwise would result (*i.e.*, the continued incarceration of one who is actually innocent). See Ward v. Hall, 592 F.3d 1144, 1155–57 (11th Cir. 2010), *cert. denied*, ____ U.S. ___, 131 S.Ct. 647, 178 L.Ed.2d 513 (2010). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001)(quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)), *cert. denied*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)(quoting Schlup, 513 U.S. at 324). Such evidence is rare, relief on such a basis is extraordinary. Schlup, 513 U.S. at 327. Petitioner has not alleged, let alone demonstrated, that he is entitled to review under the

fundamental miscarriage of justice exception.[11] <u>Schlup v. Delo</u>, 513
U.S. at 321-322. Not having shown that the fundamental miscarriage
of justice exception applies, the claims are again procedurally
barred from federal review.

## V. <u>Standard of Review in §2254 Cases</u>

Because petitioner filed his federal petition after April 24,
1996, this case is governed by 28 U.S.C. §2254, as amended by the
Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). <u>See</u>
<u>Debruce v. Commissioner, Alabama Dept. of Corr's</u>, 758 F.3d 1263,
1265-66 (11th Cir. 2014). The AEDPA imposes a highly deferential
standard for reviewing the state court rulings on the merits of
constitutional claims raised by a petitioner. "As a condition for
obtaining habeas corpus from a federal court, a state prisoner must
show that the state court's ruling on the claim being presented in
federal court was so lacking in justification that there was an
error well understood and comprehended in existing law beyond any
possibility for fairminded disagreement." <u>Harrington v. Richter</u>,
562 U.S. 86, 103, 131 S.Ct. 770, 786-87 (2011). <u>See also</u> <u>Greene v.</u>
<u>Fisher</u>, 565 U.S. 34, 39, 132 S.Ct. 38, 43, 181 L.Ed.2d 336
(2011)(The purpose of AEDPA is "to ensure that federal habeas
relief functions as a guard against extreme malfunctions in the
state criminal justice systems, and not as a means of error
correction.")(internal quotation marks omitted).

---

[11]The petitioner must support an actual innocence claim "with new reliable
evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness
accounts, or critical physical evidence-that was not presented at trial." <u>Schlup</u>
<u>v. Delo</u>, 513 U.S. 298, 324 (1995)). The Supreme Court emphasized that actual
innocence means factual innocence, not mere legal insufficiency. <u>Id.</u> <u>See also</u>
<u>High v. Head</u>, 209 F.3d 1257 (11th Cir. 2000); <u>Lee v. Kemna</u>, 213 F.3d 1037, 1039
(8th Cir. 2000); <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107 (2d Cir.
2000)(citing <u>Schlup v. Delo</u>, 513 U.S. 298, 299, (1995); <u>Jones v. United</u>
<u>States</u>,153 F.3d 1305 (11th Cir. 1998)(holding that appellant must establish that
in light of all the evidence, it is more likely than not that no reasonable juror
would have convicted him).

AEDPA allows federal courts to grant habeas relief only if the state court's resolution of those claims: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §2254(d).

A state court's decision is "contrary to" clearly established Supreme Court precedent in either of two respects: (1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). To determine whether a state court decision is an "unreasonable application" of clearly established federal law, we are mindful that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410, 120 S.Ct. at 1522. As a result, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, id. at 786 (quotation marks omitted).

It is noted that the state court is not required to cite, or even have an awareness of, governing Supreme Court precedent, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); cf. Harrington, 562 U.S. at 98, 131 S.Ct.

at 785 (reconfirming that "§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference); Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(quoting Early v. Packer, 537 U.S. at 7-8).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. Harrington, 562 U.S. at 91-99, 131 S.Ct. at 780-84 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); Gill v. Mecusker, 633 F.3d 1272, 1288 (11th Cir. 2011)(acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference, citing Harrington, 562 U.S. at 98-99, 131 S.Ct. at 784-85 and Wright v. Sec'y for the Dep't of Corr's, 278 F.3d 1245, 1254 (11th Cir. 2002)). See also Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt.")(citations and internal quotation marks omitted).

Further, review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1398-1400, 179 L.Ed.2d 557 (2011)(holding new evidence introduced

in federal habeas court has no bearing on Section 2254(d)(1) review). And, a state court's factual determination is entitled to a presumption of correctness. 28 U.S.C. §2254(e)(1). Under 28 U.S.C. §2254(e)(1), this Court must presume the state court's factual findings to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. See id. §2254(e)(1). As recently noted by the Eleventh Circuit in *Debruce*, 758 F.3d at 1266, although the Supreme Court has "not defined the precise relationship between § 2254(d)(2) and §2254(e)(1)," Burt v. Titlow, ___ U.S. ___, ___, 134 S.Ct. 10, 15, 187 L.Ed.2d 348 (2013), the Supreme Court has emphasized "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Burt, Id. (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

## VI. Applicable Principles of Law

### A. Guilty Plea Principles

"A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."[12] United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). "A plea is voluntary in a constitutional sense if the defendant receives real notice of the charge against him and understands the nature of the constitutional protections he is waiving." United States v. Frye, 402 F.3d 1123,

---

[12]Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). See also United States v. Ruiz, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002); Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984).

1127 (11th Cir. 2005), *citing*, <u>Brown</u>, 117 F.3d at 476. To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. <u>Frye</u>, 402 F.3d at 1127, *quoting*, <u>United States v. Mosely</u>, 173 F.3d 1318, 1322 (11th Cir. 1999). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." <u>North Carolina v. Alford</u>, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); <u>Boykin v. Alabama</u>, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, <u>United States v. Patti</u>, 337 F.3d 1317, 1320 (11th Cir. 2003), *cert. denied*, 540 U.S. 1149, 124 S.Ct. 1146, 157 L.Ed.2d 1042 (2004), attack the voluntary and knowing character of the guilty plea, <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, <u>United States v. Fairchild</u>, 803 F.2d 1121, 1123 (11th Cir. 1986).

In other words, a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. <u>Mabry v. Johnson</u>, 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. <u>Mabry</u>, 467 U.S. at 509, *quoting*,

Brady v. United States, 397 U.S. 742, 748 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. Mabry, 467 U.S. at 509. See also Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

## B. **Assistance of Counsel Principles**

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense." U.S. CONST. amend. VI. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Id. at 689.

More specific to this case, a criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. Padilla v. Kentucky, 559 U.S. 356, 364-65, 130 S.Ct. 1473, 1480-81, 176 L.Ed.2d 284 (2010). It is beyond dispute that an attorney has a duty to advise a defendant who is considering a guilty plea of the available options and possible consequences. See generally Brady v. United States, 397 U.S. 742, 756 (1970). See also Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948)("Prior to trial an accused is entitled to rely upon his counsel to make an independent

34

examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered. Determining whether an accused is guilty or innocent of the charges in a complex legal indictment is seldom a simple and easy task for a layman ...."). The law requires counsel to research the relevant law and facts and to make informed decisions regarding the fruitfulness of various avenues. United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004).

Thus, the Strickland two-part standard is applicable to ineffective-assistance-of-counsel claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 57-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Generally, as indicated, a court first determines whether counsel's performance fell below an objective standard of reasonableness, and then determines whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Padilla, 559 U.S. at 366-67, 130 S.Ct. at 1482. In the context of a guilty plea, the first prong of Strickland requires petitioner to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have gone to trial. Hill, 474 U.S. at 56-59, 106 S.Ct. at 370-71. See generally Lafler v. Cooper, 566 U.S. 156, 165, 132 S.Ct. 1376, 1385 (2012); Missouri v. Frye, 566 U.S. 133, 132 S.Ct. 1399 (2012).[13] A reasonable probability is "a probability sufficient to undermine

---

[13]The Supreme Court in *Frye* and *Lafler* clarified that the Sixth Amendment right to effective assistance of counsel under the standard established in Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) extends to the negotiation and consideration of plea offers that lapse or are rejected. See Frye, 132 S.Ct. at 1404-08; Lafler, 132 S.Ct. at 1384.

confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

If the petitioner cannot meet one of Strickland's prongs, the court does not need to address the other prong. Dingle v. Sec'y for Dep't of Corr's, 480 F.3d 1092, 1100 (11th Cir. 2007); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000). "Surmounting Strickland's high bar is never an easy task." Harrington, 562 U.S. at 105, 131 S. Ct. at 788 (quoting Padilla, 559 U.S. at 371, 130 S.Ct. at 1485). A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by Strickland and §2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[14], 556 U.S., at [123], 129 S.Ct. at 1420." Harrington, 562 U.S. at 105, 131 S.Ct. at 788. The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933 (2007).

## VII. Discussion

### A. First Rule 3.850 Claims

**Claims 1 through 6** of this federal petition are interrelated and arise from allegations that his pleas were involuntary because his court appointed attorneys refused to conduct proper pretrial trial preparation by failing to: (1) prepare a defense to the

---

[14]Knowles v. Mirzayance, 556 U.S. 111 (2009).

charges, (2) object to the court's determination that petitioner could not call Detective Raynaldo Santo, Jr. to contradict the testimony of the victim, Shameca Davis; (3) notify the court of the prosecution's <u>Brady</u> violation; (4) consult with petitioner regarding the status of the case; and, (5) properly advise petitioner regarding his sentence exposure if he accepted the prosecution's plea.

At the outset, it must be recalled that the petitioner discharged two court appointed attorneys. The court, during a final colloquy, advised petitioner that his options were to represent himself or proceed with the court appointed attorney. (DE#11-1:Ex.20:194). Given petitioner's argumentative responses to the court's inquiries, the court found petitioner wished to proceed without an attorney. (<u>Id</u>.). The court was also "not willing, based on the law, to appoint another lawyer," finding the case was "over three years old" and petitioner had been through two court appointed lawyers. (<u>Id</u>.). As will be demonstrated briefly below, none of the subject claims warrant relief. The plea was knowing and voluntary. Consequently, any claims arising from counsel's purported ineffectiveness prior thereto is waived by the knowing and voluntary plea.

Also, this Court is mindful of its responsibility to address and resolve all claims raised in a petition. <u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir.1992) (instructing "the district courts to resolve all claims for relief raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.") (emphasis added); <u>Williams v. Florida Dept. of Corrections</u>, 391 Fed.Appx. 806, 810 (11th Cir.2010) (unpublished). However, nothing in <u>Clisby</u> requires or suggests consideration of a claim raised for the first time in objections. The movant is cautioned that he may not raise for the

first time in objections to the undersigned's Report any new
arguments regarding these claims. Daniel v. Chase Bank USA, N.A.,
650 F.Supp.2d 1275, 1278 (N.D. Ga. 2009)(citing Williams v. McNeil,
557 F.3d 1287 (11th Cir. 2009). To the extent the movant attempts
to do so, the court should exercise its discretion and decline to
consider the argument. See Daniel, supra; See Starks v. United
States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v.
Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). This is so because
"[P]arties must take before the magistrate, 'not only their best
shot but all of the shots.'" See Borden v. Sec'y of Health & Human
Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v.
Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)).


Turning to the claims raised in this habeas petition, they
are all clearly refuted by the record, waived by the change of plea
proceeding, and by the fact that the petitioner elected to proceed
pro se without the assistance of counsel; and, as such, the claims
should be denied on that basis alone.[15] Even if his claims were not
conclusively belied by the record, they should be rejected as not
credible.


**In claim 1,** petitioner asserts that he was denied effective
assistance of counsel, where his lawyer refused to call Detective
Reynaldo Santo, Jr. to testify, in order to contradict the

_____

[15]Petitioner has not supported his claim that he was in some way not
physically or mentally competent to proceed with a guilty plea due to drug use.
He has not provided this Court or the state postconviction court with any
evidence at all, such as, medical records, showing that he was in fact under the
influence of drugs at the time that he entered his guilty pleas. Absent
supporting evidence in the record, a court cannot consider a habeas petitioner's
mere assertions on a critical issue in his pro se petition to be of probative
value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)(recognizing
that a petitioner is not entitled to habeas relief "when his claims are merely
'conclusory allegations unsupported by specifics' or 'contentions that in the
face of the record are wholly incredible'" (citation omitted)). See also Ross
v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

prosecution's key witness, Shameca Davis', anticipated in court testimony. (DE#1:4).

When the identical claim was raised in the Rule 3.850 proceeding, it was denied by the trial court, based on the state's response thereto, which argued in relevant part, as follows:

> In entering his plea to the reduced charge of second degree murder and accepting a generous plea offer of 30 years in prison, as opposed to being subject to a mandatory life sentence without parole if convicted of first degree murder, defendant Cartwright signed an[d] initialed a written plea form. (Ex.C). This form clearly set forth that the defendant would be waiving his right to cross-examine any witnesses and to call any witnesses on his behalf. (Ex.C, paragraphs 5 and 6). Further, the defendant acknowledged on the record during the plea colloquy that he could read, write and understand the English language, had attended his first year of college, and had read, signed, and understood the written plea form. (Ex.B, pages 41-43).

> Most importantly, however, is the fact that the defendant's attorney at the time of his plea, Mr. Dickstein, had only been appointed to represent him that day. (Ex.B, pages 37-39). Prior to that point, the defendant insisted on representing himself, (Ex.B, pages 1-39), and had a habit of having his attorneys removed from his case. (Ex.E, transcript of hearing held on October 18, 2010, pages 2-11). In fact, the defendant insisted that he did not want the attorney who had represented him up to that time, Mr. Smith, and would break his jaw if he sat next to him. (Ex.B, page 27). Thus, when the defendant accepted the plea offer from the state, when Mr. Dickstein represent him, he also agreed to the following:

> THE COURT:    Have you had enough time to discuss your case and the

39

proposed    agreement    with    Mr.
Dickstein, as well as Mr. Smith?

THE DEFENDANT: Right, yes.

THE COURT:    Are  you satisfied
with your lawyers' representation,
specifically Mr. Dickstein and Mr.
Smith,   the   Office   of   Regional
Counsel?

THE DEFENDANT: Yes....

Additionally, the Court informed the Defendant
that he would be waiving his right to make the
state present witnesses and evidence against
him and likewise his right to compel witnesses
to attend and testify at trial. (Ex.B, pages
44-45)....

*     *     *

Accordingly,   the   state   asserts   that   the
defendant waived his right to proceed to trial
and to call witnesses. He cannot now claim
that his attorney was ineffective for failing
to call witness when it was the defendant
himself who entered his plea and acknowledged
that his counsel did all that was asked of
him....These  grounds  should  therefore  be
DENIED.

(DE#11-1:Ex.374-377).

The denial of the claim was subsequently *per curiam* affirmed
on direct appeal in a decision without written opinion. <u>Cartwright
v. State</u>, 147 So.3d 1008 (Fla. 3 DCA 2014)(table).

During the change of plea colloquies, after Petitioner was
given an oath, Petitioner unequivocally denied taking any
medications or being under the influence of anything that would
affect or interfere with his ability to understand what was going
on in court. Petitioner's unequivocal testimony during the change

of plea, as narrated previously in this Report, clearly refutes his unsubstantiated allegations made in this §2254 proceeding. A defendant's sworn answers during a plea colloquy must mean something. Consequently, a defendant's sworn representations, as well as, the representation of his lawyer and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). See also Kelley v. Alabama, 636 F.2d 1082, 1084 (5th Cir. Unit B. 1981); Scheele v. State, 953 So.2d 782, 785 (Fla. 4th DCA 2007)("A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences."); Iacono v. State, 930 So.2d 829 (Fla. 4th DCA 2006)(holding that defendant is bound by his sworn answers during the plea colloquy and may not later assert that he committed perjury during the colloquy because his attorney told him to lie).

     Careful review of the record reveals that on the first day of trial, after the court advised the petitioner of the parameters regarding his self-representation and the courtroom decorum, the court inquired from the prosecution whether a plea was offered. (DE#11-1:T.220-222). At that time, the prosecution extended the following offer:

>          Well, Judge, you know, it's a mandatory life
>          on Count One that you have no discretion on if
>          the jury finds Mr. Cartwright guilty, as you
>          know, I'm really saying this for Mr.
>          Cartwright's benefit, not for your benefit,
>          you have no discretion on Count One. If it
>          came back as a lesser, let's say murder two
>          instead of murder one, if there are lessers,
>          again it would be more than likely be a 25-
>          year minimum mandatory. The best I can do for
>          Mr. Cartwright, and someone would really have

> to explain the parameters of this, 'cause as
> we all know as lawyers there's more to it than
> the words I'm about to say, would be second
> degree murder, 30 years, a 25-year minimum
> mandatory would have to be a part of that, and
> then on Count Two the 25-year minimum
> mandatory would be sufficient. But obviously
> with credit for time served and gain time,
> there's things that someone would have to
> explain to Mr. Cartwright, I think before he
> could legitimately understand and consider
> that offer. I'll be happy to do it. I don't
> know that it's appropriate that I do it.

(Id.:220-221).

After a brief recess was taken and court resumed, the prosecution advised the court that it had extended the above plea offer to petitioner, and tried, with the assistance of counsel, to explain the parameters of the offer. (Id.:223). The prosecution informed the court that the plea offer would require that the petitioner be sentenced to a term of 30 years imprisonment on Count 1, with a 25-year minimum mandatory term of imprisonment, and 25 years imprisonment on Count 2, with credit for time serviced, which the prosecution believed was approximately 3 years. (Id.:223). The court then addressed petitioner, explaining that with credit for time served, and given the minimum mandatory required, he would be facing at least 25 years imprisonment. (Id.:223-224). The court also cautioned petitioner that, if he were to proceed to trial and found guilty of first degree murder, as charged in Count 1, he faced a mandatory life sentence. (Id.:224).

Next, the court asked whether petitioner wanted Regional Counsel reappointed, and the petitioner responded that he did. (Id.:224-25). The court then appointed Attorney Dickstein because Attorney Smith was unavailable. (Id.). After a brief recess was

taken and court resumed, when asked whether he wished to proceed
with Attorney Dickstein with the Office of Regional Counsel or
represent himself, petitioner indicated to the court that he would
let Attorney Dickstein represent him. (Id.:225). The prosecution
then reiterated that the plea extended was 30 years with a 25-year
minimum mandatory requiring petitioner to plead guilty to second
degree murder as a lesser included offense of first degree murder,
as charged in Count 1. (Id.:227). On Count 2, the prosecution
advised it was a 30 year sentence with a 25-year minimum mandatory,
as charged. (Id.).

When asked if he had an opportunity to discuss the plea offer
in detail with Attorney Dickstein, petitioner indicated that he
had. (Id.:227). He also conceded that Attorney Dickstein explained
everything to him, and answered all of his questions. (Id.).
Petitioner then indicated that there was nothing that counsel had
either failed or refused to do for him. (Id.). When the court
reminded petitioner that prospective jurors were waiting outside,
ready to proceed, and then asked petitioner if he wanted to accept
the prosecution's plea offer or proceed to trial, petitioner
responded, "Plead guilty, accept the offer." (Id.:228).

At that time, after petitioner was given the oath, he
confirmed he was able to understand, read, and write English.
(Id.:228). He denied being under the influence of any alcoholic
beverage, drugs, or medication, and further denied ever being
treated for any mental illness. (Id.:228-29). However, the court
then noted that petitioner had previously indicated he had been
treated for schizophrenia, and when questioned whether this was
affecting his ability to understand the nature of the change of
plea proceedings, petitioner responded that it did not. (Id.:229).
He next denied being under the influence of any medications, and

then provided information regarding his educational background. (<u>Id</u>.).

Regarding the plea agreement and waiver of rights form, the movant acknowledged it was his signature at the bottom of the document. (<u>Id</u>.:229). Petitioner unequivocally indicated he had read and understood its contents, and had discussed it with Attorney Dickstein. (<u>Id</u>.:229-230). When asked if he was satisfied with the representation provided by Attorney Dickstein and Attorney Smith, with the Office of Regional Counsel, petitioner indicated that he was. (<u>Id</u>.:230). Petitioner acknowledged that he wished to enter a plea of guilty to the offense of murder in the second degree, a first degree felony, punishable by life imprisonment, as a lesser included offense of first degree murder, as charged in Count 1, and attempted first degree murder, a life felony, as charged in Count 2. (<u>Id</u>.:230). When asked if he had any questions regarding the contents of the waiver of rights form he had executed, petitioner stated he did not. (<u>Id</u>.:231).

Next, petitioner acknowledged and understood that by entering a guilty plea, he was waiving or otherwise giving up, certain constitutional rights, including, but not limited to, the right to a trial by judge or jury, to make the prosecution present witnesses and evidence and prove that petitioner is guilty beyond a reasonable doubt, the right to confront and cross-examine witnesses, the right to compel witnesses to attend and testify at trial, together with the right to present any witnesses or defenses available. (<u>Id</u>.:231-32). Petitioner also understood that by pleading guilty, he was waiving the right to testify or not on his own behalf at trial, and to have his lawyer take additional sworn statements of witnesses, further investigate his case, including locating any other defense witnesses, and filing other motions,

including motions to exclude evidence. (<u>Id</u>.:232).

When asked if he was willing to give up each of the foregoing rights and accept the punishment negotiated between the parties, the petitioner responded that he did. (<u>Id</u>.:233-34). Petitioner understood he had the right to appeal the sentence imposed, but was giving up the right to contest whether he committed the offenses. (<u>Id</u>.:234). Petitioner fully understood the sentence that was to be imposed in his case. (<u>Id</u>.). Counsel then stated on the record that there is no DNA that would tend to exonerate the petitioner. (<u>Id</u>.:235).

Regarding his sentence exposure and pretrial credit, the court clarified that petitioner's sentence involves a minimum 25-year term of imprisonment, based on the 10-20-Life statute, and that he would not receive any gain time as to that sentence. (<u>Id</u>.:236). As to the balance of his sentence, the court reminded petitioner that it was up to the Florida Department of Corrections how much gain time he will receive. (<u>Id</u>.:236-37). Notwithstanding, petitioner acknowledged and understand that he would not serve a total of more than 30 years imprisonment. (<u>Id</u>.:237). Petitioner also understood that if he were not a U.S. citizen, that the entry of the guilty plea may have collateral consequences, including his deportation from the United States. (<u>Id</u>.:237-238). Next, petitioner acknowledged having read the police reports and discovery, and was aware of the facts the prosecution would have to prove if he elected to proceed to trial. (<u>Id</u>.:238).

Factually, the prosecution proffered that if the case had gone to trial, it would have established that on April 27, 2008, in Fort Lauderdale, Florida, the petitioner shot Shanesha Conaway multiple times (the victim listed in Count 1), with a nine millimeter Taurus

firearm, resulting in her death. (Id.:238). After killing Shanesha
Conaway, petitioner then ran after Shameca Davis (the victim listed
in Count 2), shooting her twice, but she recovered from her
injuries. (Id.:238-239). The defense then agreed that for purposes
of the plea the state has presented evidence that would establish
a *prima facie* case to the jury. (Id.:239).

Petitioner next denied being threatened, coerced, or otherwise
forced to enter a guilty plea. (Id.). He also denied having been
made any promises or other representations, other than as agreed-
upon with the prosecution in order to induce him to change his
plea. (Id.). He denied feeling he had been misadvised or
misrepresented by anyone in order to induce him to enter a guilty
plea. (Id.). When he was again asked whether there was anything his
lawyers failed or refused to do in working up case, in representing
petitioner, or in negotiating the plea, petitioner stated there was
not. (Id.:239-240). He denied being misadvised or having anything
misrepresented to him in order to induce him to plead guilty.
(Id.:240). When asked whether he still wished to enter pleas of
guilty to the offenses of murder in the second degree and attempted
murder in the first degree, and whether his plea was freely,
knowingly, and voluntarily being entered, petitioner stated that it
was. (Id.).

After reviewing the court file, together with the facts and
circumstances contained therein, the court finds that there is an
independent factual basis to support each of the charged offenses.
(Id.:240-41). The court further found petitioner to be alert,
intelligent, and that he understood the nature of the charges and
the consequences of the guilty pleas, and that his pleas were
freely, voluntarily, and knowingly made with a knowing and
intelligent waiver. (Id.:241). The court then accepted the

46

petitioner's guilty pleas. (Id.). In accordance with the terms of the negotiated plea offer, petitioner was then sentenced as to the negotiated second degree murder, as a lesser included offense of Count 1, to a term of 30 years imprisonment with a 25-year minimum mandatory, with credit of 1099 days time-served. (Id.). As to Count 2, the attempted first degree murder conviction, the court adjudicated petitioner guilty and sentenced him to a concurrent term of 25 years imprisonment, with 1099 days credit time served. (Id.:242).

As indicated above, the transcripts of the change of plea and sentencing hearings conclusively show that petitioner fully understood the terms of his plea agreement, wanted to persist with a guilty plea as to the offenses, and had no unresolved questions about the terms of the plea agreement. By entering into a knowing and voluntary plea, petitioner was agreeing that no further witnesses or investigation would be conducted in his case. Further, it is worth recalling that petitioner discharged trial counsel, Attorney Smith, and only proceeded with stand-by Attorney Dickstein for purposes of the plea offered in court. Prior thereto, he chose to represent himself. Therefore, he cannot fault counsel since he elected to discharge not one, but two attorneys. Therefore, the state courts' summary rejection of the claim raised herein during the Rule 3.850 proceeding was not error. Again, at all times during the change of pleas, Petitioner quickly and appropriately answered the court's questions. Petitioner was at all times coherent and displayed no signs of not understanding what was transpiring at the change of plea proceedings. He indicated he was satisfied with the work done on his case, that he freely and knowingly wanted to change his plea, and was aware and understood the ramifications arising therefrom.

The AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e). Petitioner has clearly not done so here and has provided no basis to redetermine the trial court's factual findings.[16] Denial of relief on this ground does not conflict with clearly established federal law, nor is it based upon an unreasonable determination of the facts. The rulings by the state court should, therefore, not be disturbed. See Williams v. Taylor, 529 U.S. 362 (2000). See also Mitchell, 540 U.S. at 16; Early v. Packer, 537 U.S. at 7-8.

Alternatively, given the record before the state trial court, and the court's conclusion thereon, there has been no error in the court finding that petitioner could not satisfy Strickland's prejudice prong. It bears noting at the outset that petitioner has not made a significant showing of ineffective assistance of counsel. First, petitioner has not provided here any affidavits from Detective Santos, Jr., that he would have testified as proffered at petitioner's trial. Consequently, such a bare and conclusory allegation, bereft of record support, is subject to summary dismissal. Machiproda v. United States, 368 U.S. 487 (1962). Regardless, the petitioner's proffered testimony does not alter the outcome of the proceedings, given the evidence adduced at trial. See Fugate v. Head, 261 F.3d 1206, 1239, n.54 (11th Cir. 2001)(fact that other witnesses could have been called proves only that short-comings of trial counsel can be identified, while

---

[16]It should be noted that the trial court judge presiding over the change of plea and sentence proceedings was the same judge who presided over the subject state postconviction proceedings. Where the judge presiding over the trial or, in this case, change of plea proceedings is the same judge presiding over the post conviction proceedings, the presumption of correctness afforded the findings of fact of the state court is particularly strong. See May v. Collins, 955 F.2d 299, 314 (5th Cir.), cert. denied, 504 U.S. 901 (1992). As indicated, the trial court's decision in the Rule 3.850 proceeding was affirmed on appeal.

shortcomings can be identified, perfection is not the standard of effective assistance).

Under Florida law, for a claim of ineffective assistance of counsel, based on the failure to investigate, interview or call a witness, to be facially sufficient, the allegations must include: (1) the identity of the prospective witness; (2) that the prospective witness would have been available to testify at trial; (3) the substance of the testimony; and (4) an explanation as to how the omission of the testimony prejudiced the outcome of the trial. See Nelson v. State, 2004 WL 1207517 (Fla. 2004). No such showing has been made either in the state forum or this habeas proceeding. Neither here nor in the state forum has petitioner demonstrated that Detective Santos would have testifies as proffered, much less that it would have been permitted by the court, who had previously determined that it was inadmissible hearsay. Further, petitioner has not demonstrated that this testimony would have resulted in an acquittal of the charges. See e.g., Lovett v. State, 627 F.2d 706, 710 (5 Cir. 1980)

Moreover, under federal law, however, whether to call a particular witness or cross-examine certain witnesses are generally questions of trial strategy. See United States v. Costa, 691 F.2d 1358 (11 Cir. 1982). Where counsel fails to investigate and interview promising witnesses, and therefore "ha[s] no reason to believe they would not be valuable in securing [defendant's] release," counsel's inaction constitutes negligence, not trial strategy. Workman v. Tate, 957 F.2d 1339, 1345 (6th Cir. 1992)(quoting United States ex rel. Cosey v. Wolff, 727 F.2d 656, 658 n.3 (7th Cir. 1984)). However, strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Strickland v. Washington,

49

466 U.S. at 690-91. Here, petitioner has not demonstrated that had this witness been secured that he would have offered favorable, much less exculpatory testimony. Petitioner's allegations are, at best, speculative.

Moreover, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995). "This is especially true because allegations of what a witness would have testified are largely speculative. Speculation about what witnesses could have said is not enough to establish the prejudice-prong of Strickland." Jones v. McNeil, 2009 WL 1758740, at *6 (S.D.Fla. June 22, 2009) (unpublished). Of course, petitioner cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." Van Poyck v. Fla. Dep't of Corr's, 290 F.3d 1318, 1324 (11th Cir. 2002). Consequently, relief is not warranted on this claim, and the rejection of the claim in the state forum should not be disturbed here. Williams v. Taylor, supra.

In **claim 2**, petitioner asserts he was denied effective assistance of counsel, where his lawyer failed to advise the court that the prosecution failed to disclose favorable evidence to the defense, in violation of Brady v. Maryland, 373 U.S. 83 (1963). (DE#1:5). Petitioner maintains that the prosecution failed to disclose evidence that Shameca Davis, during her deposition of April 28, 2010, denied ever meeting, seeing, or otherwise talking with Detective Santos, Jr. (DE#1:6). Petitioner argues that this information would have contradicted the allegations contained in Detective Santos' police report. (Id.:5-6).

First, as discussed in relation to claim 1 above, the petitioner cannot demonstrate deficient performance or prejudice under Strickland. Even if not waived, he cannot prevail on the claim. The petitioner's suggestion that the prosecution committed a Brady violation, when it withheld favorable or impeaching information which could have been used by petitioner either during cross-examination of the state's witnesses, or by presenting him as a defense witness, warrants no relief, for the reasons previously stated in this Report in relation to claim one. As will be recalled, petitioner waived pursuit of this issue when he entered into a knowing and voluntary plea.

To prove a violation of due process when evidence is withheld, the defense must demonstrate: (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. United States v. Severdija, 790 F.2d 1556, 1558 (11 Cir. 1986). This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness. Giglio v. United States, 405 U.S. 150, 154 (1972). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Stewart, 820 F.2d 370, 374 (11 Cir. 1987), quoting, United States v. Bagley, 473 U.S. 667, 682 (1985). A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. United States v. Alzate, 47 F.3d 1103, 1109-1110 (11th Cir. 1995), quoting, United States v. Bagley, 473 U.S. 667, 682 (1985).

In this case, the petitioner cannot demonstrate that a Brady violation occurred. First, no showing has been made, either in the state forum or this habeas proceeding, that the subject evidence

was exculpatory, much less material. Moreover, the record reveals that the defense was adequately prepared for trial regarding the allegations surrounding the petitioner's arrest. Notwithstanding, petitioner had also knowingly and voluntarily discharged counsel, and had he elected to proceed to trial, he was doing so *pro se*, with only stand-by counsel to assist with any questions that may arise. On this record, even if such information had been suppressed by the prosecution, as alleged, no showing has been made either in the state forum or this habeas proceeding, that the petitioner was prejudiced as a result thereof. Thus, to the extent the claim was properly exhausted in the state forum and thus ripe for federal review here, relief is not warranted here. <u>Williams v. Taylor</u>, <u>supra</u>.

Given the record before the state trial court, and the court's conclusion thereon, there has been no error in the court finding that petitioner could not satisfy <u>Strickland</u>'s prejudice prong. It bears noting at the outset that petitioner has not made a significant showing of ineffective assistance of counsel. Under the totality of the circumstances present here, petitioner has not demonstrated that his constitutional rights were violated, much less that counsel was deficient under <u>Strickland</u> for any of the reasons stated, or that petitioner suffered prejudice arising therefrom. Consequently, relief must be denied. Thus, to the extent the claim was properly exhausted in the state forum, since it fails on the merits, the rejection thereof should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim 3**, petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to consult with petitioner regarding the status of the case. (DE#1:6). Petitioner maintains he was never informed by counsel of any possible defenses

to the charges, was never consulted regarding the prosecution's evidence, and never informed why counsel refused to call Detective Santos, Jr. to testify at trial. These allegations are not only belied by the record, but they border on the perjurious. As will be recalled, the issue regarding the detective's testimony was argued by the defense to the court, in the petitioner's presence. Further, by entering into a knowing and voluntary plea, petitioner waived any possible defenses. Regardless, during his change of plea proceedings, petitioner stated under oath that he had fully discussed the charges together with the prosecutions evidence, and was satisfied with counsel's representation. Even if he had not been consulted, since counsel was discharged prior to trial, and the petitioner was proceeding *pro se*, petitioner cannot satisfy <u>Strickland</u>'s prejudice prong.

When the identical claim was raised in the Rule 3.850 proceeding, it was denied by the trial court, based on the state's response thereto, which argued, in pertinent part, as follows:

> The record reflects that defendant Cartwright continuously manipulated the court process through multiple *Nelson* and *Faretta* hearings. (Ex.B, pages 11-25; Ex.E, pages 3-11; Ex.F, page 7; Ex.G, transcript of hearing held March 18, 2010, pages 3-39; Ex.H, transcript of hearing held on April 26, 2010). In fact, the Fourth District noted, in the defendant's direct appeal from the denial of his motion to withdraw his plea, at <u>Cartwright v. State</u>, 112 So.3d 582, 584 (Fla. 4 DCA 2013):
>
> > Appellant's claim that he was denied adequate representation is also refuted by the record. Indeed, the record reflects that Appellant engaged in a pattern of requesting a *Nelson* hearing and firing and re-hiring his court appointed counsel

whenever he felt. The record also reflects that the trial court was more than patient with Appellant's demands, holding five separate *Nelson* hearings, and allowing Appellant to fire his court appointed public defender and obtain new counsel from the regional conflict office.

On the day he entered his plea, again, the defendant sought to fire his counsel, then to rehire alternative counsel for the purposes of the plea. It is the state's position that the defendant, knowing that Mr. Dickstein was only advising him as to the terms of the plea offer, cannot complain that counsel failed to consult with him about the facts or that he failed to present a defense. Indeed, the defendant was very aware of the facts as the prosecutor spelled them out in detail even noting that the defendant's actions of shooting the victims was captured on surveillance tape. (Ex.F, pages 13-16). Indeed, even the defendant's prior counsel, Mr. Raticoff, stated:

...Mr. Cartwright doesn't want to listen. He has his own ideas about what he wants to do...we began to talk about the videotape. I tried to show Mr. Cartwright in the videotape where he admitted that he had the gun. He denied he ever said that. HE was adamant. We had discussions over two days. I brought in the videotapes...played the portion of the videotape where he clearly said I had the gun, I bought the gun with me, which is important because he wants to claim self-defense. He's claiming he took the gun from the victim...

So he's refusing to cooperate. It's a game that he's playing, at least in my view. He's delayed this case. There is a videotape in this case.

54

He wants me to call witnesses. My
strategy, as I explained to him, was
not to replay the offense over and
over for the jury so that they can
hear again and again what they saw
for themselves in the videotape.
That being Mr. Cartwright getting a
gun, shooting one woman in the head,
and chasing down the mother of his
child and shooting her several
times...

...His narcissim[sic] gets in the
way of his actual ability to deal
with what he's facing right now....I
will not be a party to Mr.
Cartwright telling me to call
witnesses that will further injure
his case when he has no idea what
he's doing.

(DE#11-1:Ex.20:377-79).

The denial of the claim was subsequently *per curiam* affirmed
on direct appeal in a decision without written opinion. Cartwright
v. State, 147 So.3d 1008 (Fla. 3 DCA 2014)(table).

The arguments raise by the prosecution and adopted by the
trial court in rejecting this claim were not error. There is
nothing of record to suggest that his attorneys failed to consult
with the petitioner. To the contrary, it was due to petitioner's
own actions that the attorneys were discharged from further
representation. In fact, the evidence shows that counsel did not
agree with petitioner's insistence that they call witnesses that
would hurt, rather than aid petitioner's defense. Petitioner cannot
show deficient performance or prejudice arising from counsel's
failure to consult, as suggested. The rejection of this claim in
the state forum should not be disturbed here. Williams v. Taylor,
supra.

In **claim 4,** petitioner asserts that he was denied effective assistance of counsel, where his lawyer misadvised the petitioner on how much time he would actually serve if he accepted the prosecution's plea agreement. (DE#1:7). Petitioner claims his attorney informed him that both offenses would be lowered to second degree felonies. (<u>Id</u>.). Petitioner claims that Attorney Dickstein's advice during plea discussions was deficient because counsel never reviewed the pretrial discovery in order to ascertain whether petitioner qualified for a more favorable plea offer. (<u>Id</u>.).

As will be recalled, during one of the many court hearings, petitioner threatened to break his court appointed counsel's jaw if he were anywhere near him, and insisted on proceeding *pro se*. He accepted new standby counsel for purposes of discussing the state's plea offer, knowing a venire panel was waiting outside to commence trial. Moreover, even if he had been misadvised by counsel, petitioner is still not entitled to relief on this claim. Any such misadvice was cured by the court's more than thorough change of plea proceeding. In fact, the prosecution set forth in detail the exact terms of the plea and the sentence expected, and a colloquy was then conducted by the court with petitioner regarding his understanding of the terms of the plea and the sentence to be imposed.

Even if counsel had provided petitioner with misadvice regarding his sentence exposure, prediction by counsel regarding a potential sentence is not deficient performance. <u>United States v. Himick</u>, <u>supra</u>. <u>see also</u>, <u>United States v. Pease</u>, 240 F.3d 938, 940-42 (11th Cir. 2001)(rejecting argument by defendant sentenced as a career offender that her plea was not knowing and voluntary because he had relied on counsel's prediction that her potential sentence

under the plea agreement would be anywhere from five to ten years); <u>Carranza v. United States</u>, 508 Fed.Appx. 873 (11th Cir. 2013); <u>United States v. Arvanitis</u>, 902 F.2d 489, 494-95 (7th Cir. 1990)(no ineffective assistance where claim based only on inaccurate prediction of sentence).

Moreover, to the extent the petitioner suggests that counsel coerced him into accepting the proffered plea offer by misrepresenting his sentence exposure, that claim warrants no federal habeas corpus relief. It should be noted that when the issue was raised on direct appeal, the Fourth District Court of Appeal rejected the claim, finding as follows:

> Finally, Appellant's claim that he was coerced into entering his plea by threat of counsel is also conclusively refuted by the record. Under Florida, a defendant's claim that his plea was the result of coercion by defense counsel may be conclusively refuted by the defendant's responses during plea colloquy and the signed plea form. *Williams v. State*, 919 So.2d 645, 646 (Fla. 4 DCA 2006). The record reflects that the court engaged in a thorough plea colloquy with Appellant, in which Appellant represented that he understood the parameters of the plea, that no one had threatened or coerced him into entering a plea, that no one had promised him anything, and that no one had misadvised him or made any misrepresentations to him. Thus, the record refutes Appellant's claim that his plea was coerced.

<u>Cartwright v. Florida</u>, 112 So.3d 582, 584 (Fla. 4 DCA 2013).

Here, the movant's plea colloquy clearly satisfied the three core concerns of a knowing and voluntary guilty plea. <u>United States v. Siegel</u>, 102 F.3d 477, 481 (11th Cir.1996) (plea is free from coercion, defendant understands nature of charge, and defendant

knows and understands consequences of pleading guilty). By his own sworn acknowledgments, petitioner indicated his guilty plea was free from coercion, he understood the nature of the charges, and he understood the consequences of his plea, including the potential maximum sentences he faced as a result therefrom. Significantly, movant voiced no objection at the time of sentencing about his total 30 year sentence with a 25-year minimum mandatory. Under these circumstances, the rejection of this claim in the state forum, which was in accord with federal constitutional principles, should not be disturbed here. Williams v. Taylor, supra.

In **claim 5**, petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to prepare an adequate defense to the petitioner's charges. (DE#1:7). As will be recalled, petitioner cannot prevail on this claim. By entering into a knowing and voluntary plea, he waived or otherwise forfeited any right to prepare an adequate defense to the charges. He cannot fault counsel now for failing to do so, especially since his plea was knowing and voluntarily entered.

When the claim was raised in the Rule 3.850 proceeding, it was denied, based on the state's response thereto, which argued, in relevant part, that petitioner cannot claim counsel was ineffective as alleged, because he did not proceed to trial, having entered into a negotiated plea with the prosecution. Therefore, he waived the issue. (DE#11-1:Ex.20:383). The denial of the claim was subsequently *per curiam* affirmed on direct appeal in a decision without written opinion. Cartwright v. State, 147 So.3d 1008 (Fla. 3 DCA 2014)(table). As discussed previously in this Report, petitioner entered into a knowing and voluntary guilty plea. By entering into the plea, he was instructing his counsel not to proceed further with any investigation or defenses. Regardless, he

had discharged his attorneys and was proceeding *pro se*. For all of the foregoing reasons, the petitioner cannot demonstrate deficient performance or prejudice under <u>Strickland</u> so that the rejection of this claim in the state forum should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim 6**, petitioner asserts he was denied effective assistance of counsel, where his lawyer failed to object to the court's ruling that Detective Santo's in-court testimony would be hearsay. (DE#1:8). Even if counsel was deficient in this regard, petitioner cannot satisfy the prejudice prong under <u>Strickland</u>. Petitioner waived any right to contest the court's ruling and counsel's failure to pursue the issue by entering into a knowing and voluntary plea. Consequently, the rejection on that basis, in the state forum, was not improper and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

Accordingly, the state court determination that Petitioner was not entitled to relief on any of the claims raised herein is not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). This remains so even where the state courts do not expressly cite <u>Strickland</u> or other Supreme Court opinions when rendering their decisions. See <u>Mitchell</u>, 540 U.S. at 16; <u>Early v. Packer</u>, 537 U.S. at 7-8.

It is apparent from review of the record as a whole that Petitioner entered the pleas, because he was in fact guilty of the subject offenses and he believed it was truly in his best interest to do so. While Petitioner may not now believe so, he received a

benefit from entering the guilty plea. The evidence against him was overwhelming with a finding of guilt as to all crimes charged the most likely outcome at a trial in that it does not appear that Based upon the negotiated plea, the trial court imposed a total term of imprisonment significantly less than that which petitioner faced had he been convicted at trial. Accordingly, an even harsher outcome was likely if he had proceeded to trial and was found guilty of the subject offenses. Petitioner's post-plea assertions that he would have proceeded to trial but for counsel's alleged ineffectiveness are, therefore, incredible.

In sum, the guilty pleas were clearly entered in compliance with all applicable constitutional principles. See e.g., Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brady v. United States, 397 U.S. 742, 748 (1970). Additionally, even if counsel's performance can be viewed as deficient for any or all of the reasons alleged, based upon the above-reviewed record, Petitioner has not demonstrated that his sentence was increased by the deficient performance of his attorney or, in the converse, that his sentence would have been less harsh. See Glover v. United States, 531 U.S. 198, 121 (2001)(holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established Strickland prejudice"); Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993)(cited in Glover). The entry of the plea was clearly in the best interest of the petitioner, and counsel's performance was not constitutionally ineffective with regard to the plea and/or sentencing. See Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984). Moreover, the undersigned finds disingenuous petitioner's after the fact assertion that but for counsel's deficiencies, he would have insisted on proceeding to trial, rather than entering the pleas he did. As found correctly by the state court, petitioner here is likewise entitled to no habeas

corpus relief on any of the claims presented. The state courts' rejection of the claims should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

### B.   Second Rule 3.850 Claims

As will be recalled, **claims 7 through 12** of this federal petition were raised by the petitioner in his second Rule 3.850 motion for post-conviction relief. (DE#11-1:Ex.31). The motion was denied based on the state's response thereto, which argued that the claims raised therein were procedurally barred from review because they should have been raised in petitioner's initial Rule 3.850 motion and not in this unauthorized, successive Rule 3.850 motion. (DE#11-1:Exs.32-33). That denial was subsequently *per curiam* affirmed on direct appeal. <u>Cartwright v. State</u>, 169 So.3d 1187 (Fla. 4 DCA 2015)(table). As discussed previously in this Report, these claims were procedurally defaulted in the state forum and are thus procedurally barred from review here. Petitioner has not overcome the bar by demonstrating cause and prejudice, nor has he shown a miscarriage of justice will result from failing to consider the claims on the merits.

Regardless, his arguments that counsel was ineffective for failing to secure an alibi or adequate defense, introduce exculpatory evidence at trial, provide effective assistance or communication, and object to the state's stipulation as to Detective Santos, Jr., warrant no habeas corpus relief here. Petitioner waived all of these claims when he entered into a knowing and voluntary plea. Consequently, he cannot satisfy <u>Strickland</u>'s prejudice prong. Therefore, even if the claims were not procedurally defaulted, they are devoid of merit, or otherwise waived given the petitioner's knowing and voluntary change of plea.

61

Thus, the petitioner is not entitled to relief on claims 7 through 12, as listed above.

In conclusion, the record reflects that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Petitioner chose to discharge not one but two attorney's appointed to represent him. He also elected to proceed *pro se*. On the record here, he has not demonstrated that he was deprived of constitutionally effective assistance of counsel for any or all of the reasons alleged above. Petitioner is not entitled to federal habeas corpus relief on any of the claims presented.

Finally, this court has considered all of the petitioner's claims for relief, and arguments in support thereof. See Dupree v. Warden, 715 F.3d 1295 (11th Cir. 2013)(citing Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, petitioner has failed to demonstrate how the state courts' denial of his claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the extent they were not considered in the state forum, and a *de novo* review of the claim conducted here, as discussed in this Report, none of the claims individually, nor the claims cumulatively, warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed herein or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail herein.

## VIII. __Evidentiary Hearing__

Based upon the foregoing, Petitioner's request for an evidentiary hearing on the merits of any or all of his claims should be denied since the habeas petition can be resolved by reference to the state court record. 28 U.S.C. §2254(e)(2); <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). <u>See also</u> <u>Atwater v. Crosby</u>, 451 F.3d 799, 812 (11th Cir. 2006)(addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim."). Petitioner has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing.

## IX. __Certificate of Appealability__

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly meritless, Petitioner cannot satisfy the *Slack* test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2254 Proceedings, Rule 11(a), 28 U.S.C. foll. §2254: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## X.  Recommendations

Based upon the foregoing, it is recommended that this petition for habeas corpus relief be DENIED; that no certificate of appealability issue; and, that the case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 4th day of April, 2017.

UNITED STATES MAGISTRATE JUDGE

64

```
cc:   Kevin Earl Cartwright, Pro Se
      DC#L06812
      Santa Rosa Correctional Institution
      Inmate Mail/Parcels
      5850 East Milton Road
      Milton, FL 32583

      Georgina Jimenez-Orosa, Ass't Atty Gen'l
      Attorney General Office
      1515 N Flagler Drive, Suite 900
      West Palm Beach, FL 33401-3432
      Email: CrimAppWPB@MyFloridaLegal.com
```